UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**ROBERT M. CRUTCHER, III**,                                Civil Case No. 6:14-CV-00308-KI

                    Plaintiff,

                                                                    OPINION AND ORDER

                    v.

**CAROLYN W. COLVIN,**
Acting Commissioner of Social Security,

                    Defendant.


            Kathryn Tassinari
            Brent Wells
            Harder, Wells, Baron & Manning, P.C.
            474 Willamette, Suite 200
            Eugene, Oregon  97401

                    Attorney for Plaintiff

            S. Amanda Marshall
            United States Attorney
            District of Oregon

Page 1 - OPINION AND ORDER

Ronald K. Silver
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon  97201-2902

Sarah L. Martin
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington  98104-7075

      Attorneys for Defendant

KING, Judge:

Plaintiff Robert M. Crutcher brings this action pursuant to section 205(g) of the Social

Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying plaintiff's application for supplemental security income benefits ("SSI").

I reverse the decision of the Commissioner and remand for a finding of disability.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits

to people who have contributed to the Social Security program and who suffer from a physical or

mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security

income benefits may be available to individuals who are age 65 or over, blind, or disabled, but

who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to

cause death or to last for a continuous period of at least twelve months.  42 U.S.C.

§§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability.  The evaluation is carried out by the Administrative Law Judge ("ALJ").  The claimant has the burden of proof on the first four steps.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920.  First, the ALJ determines whether the claimant is engaged in "substantial gainful activity."  If the claimant is engaged in such activity, disability benefits are denied.  Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520©), 416.920©).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the

claimant from performing work which the claimant performed in the past.  If the claimant is able

to perform work she performed in the past, the ALJ makes a finding of "not disabled" and

disability benefits are denied.  20 C.F.R. §§ 404.1520(e), 416.920(e).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the

fifth and final step to determine if the claimant can perform other work in the national economy

in light of his age, education, and work experience.  The burden shifts to the Commissioner to

show what gainful work activities are within the claimant's capabilities.  Parra, 481 F.3d at 746.

The claimant is entitled to disability benefits only if he is unable to perform other work.

20 C.F.R. §§ 404.1520(f), 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial

evidence and is based on correct legal standards.  Molina v. Astrue, 674 F.3d 1104, 1110 (9th

Cir. 2012).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less

than a preponderance.  Id. (internal quotation omitted).  The court must uphold the ALJ's

findings if they "are supported by inferences reasonably drawn from the record[,]" even if the

evidence is susceptible to multiple rational interpretations.  Id.

## THE ALJ'S DECISION

The ALJ found Crutcher has severe impairments of dysthymia; inguinal hernia, status

post repair in 2011; alcohol abuse; and polysubstance abuse in remission.  The ALJ also found

that these impairments, either singly or in combination, are not severe enough to meet or

medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P,

Appendix 1.  After reviewing the record, the ALJ found Crutcher has the residual functional capacity to perform light work except he should not have jobs that require him to work with the public as an integral part of a work crew, should perform only entry-level job duties, and should be given only entry-level instructions.  Based on vocational expert testimony, the ALJ found Crutcher could work as an electronic worker, electric assembler, or basket filler and, thus, is not disabled under the Act.

## FACTS

Crutcher alleges he became disabled on November 5, 2010,[1] when he was 47 years old. He left school in the eleventh grade and never earned a GED.  Crutcher has worked as an auto mechanic, a cashier, a lubrication technician, and a parts puller in a wrecking yard, but he has never earned over $1,500 in a year.

Crutcher had not worked other than occasional odd jobs since 2000 and was supported to a large extent by his mother.  He moved from place to place, including his mother's home, motels when his mother paid for the room, his ex-girlfriend's home, and shelters.  At the time of the hearing, Crutcher saw a counselor weekly and took medication for depression and anxiety.

Although Crutcher had two hernia repairs, he continues to have problems with abdominal pain and the hernia occasionally reappearing.  Because of the hernia, he claims he cannot walk more than six blocks, bend over, or lift more than ten or fifteen pounds without straining. Abdominal pain and vomiting have sent Crutcher to the emergency room or urgent care centers multiple times, often on a weekly basis, but the doctors have not pinpointed a specific cause.

---

[1]  Crutcher filed his application with an alleged onset date of January 1, 1992 but amended the date at the hearing to reflect the date of his SSI application, which would be the earliest date Crutcher could receive benefits.

Crutcher's mental impairments cause him to feel useless, accelerate his heartbeat, make it impossible for him to ride a bus full of other riders, and give him intrusive memories. He complains of difficulty dealing with people and of having focus and memory problems. Although Crutcher's statements about alcohol use are inconsistent, he admits using alcohol to calm himself or to ease the abdominal pain. The latest of several suicide attempts was in 2012 when he took psychiatric medication mixed with enough alcohol to make him fall asleep and fall into the river, hoping to drown.

## DISCUSSION

I.    <u>Medical Opinions</u>

Crutcher argues the ALJ erred in failing to credit the opinion of his treating physician, Dr. Bigley; his treating qualified mental health practitioners, Patti Bear and Samantha Poss; and his treating psychological mental health nurse practitioner, Mary Kate Coppedge.

A.    <u>Dr. Bigley</u>

Dr. Bigley was Crutcher's primary care physician from December 2011 through the time of the hearing in November 2012; he saw Crutcher about twice a month. On October 12, 2012, Dr. Bigley explained Crutcher suffered from a severe depressive illness and got little benefit from the multiple psychiatric medications Dr. Bigley tried prescribing. In Dr. Bigley's opinion, Crutcher's agoraphobia caused him to resist Dr. Bigley's efforts to have him see a counselor. He stated, in part:

> Given his current mental status, there is absolutely no possible way that he could hold down any type of gainful employment at all. His depressive issues are so severe that he would choose to walk seven miles to come visit me in my office rather than sitting on a bus that is crowded.

Tr. 366.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Id. (treating physician); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010) (examining physician). Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. Orn, 495 F.3d at 632; Turner, 613 F.3d at 1222. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Hill v. Astrue, 698 F.3d 1153, 1160 (9th Cir. 2012) (internal quotation omitted).

The ALJ gave no significant weight to Dr. Bigley's opinion, instead giving more weight to the opinion of the examining psychologist, Dr. Belcher. The ALJ reasoned Dr. Bigley's opinion was inconsistent with the record as a whole; lacked valid clinical signs, findings, and diagnoses; and relied on symptoms which could have been caused by alcohol consumption.

By relying on Dr. Belcher's observation of his symptoms, Crutcher contends there is no conflict between Dr. Belcher's report and Dr. Bigley's conclusion. Crutcher claims Dr. Bigley's opinion is also consistent with the mental health providers at Options Counseling, Bear and Poss. In Crutcher's view, Dr. Bigley based his conclusion on observations over a long period of time, a basis which is not tainted by Crutcher's credibility problems. In addition, Crutcher claims the

medical records show little evidence of alcohol use or impairment from alcohol, even though he saw medical providers frequently.

I do not agree with Crutcher that Dr. Belcher's and Dr. Bigley's opinions do not conflict–Dr. Belcher did not opine Crutcher was unable to work and Dr. Bigley did. Thus, to reject Dr. Bigley's opinion, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record.

I agree with the ALJ that Crutcher does not consistently admit to medical providers the amount of alcohol he is drinking. He has been warned that alcohol can be a depressant, but no physician has opined that alcohol is the source of his problem. Because there is not enough evidence of the effects of Crutcher's drinking, I am not persuaded by the ALJ's reasoning that Dr. Bigley generally discounts the effect of substance abuse. As a result, the ALJ's reliance on Crutcher's substance abuse, and whether or not Dr. Bigley properly accounted for it, is not a specific and legitimate reason to discredit Dr. Bigley's opinion.

As the ALJ noted, it is also true that Dr. Bigley conceded he did not have a "good handle on the specific diagnosis," suspecting bipolar disorder, post traumatic stress disorder ("PTSD"), agoraphobia, and a generalized anxiety disorder. Whatever the specific cause of the symptoms, however, Dr. Bigley examined Crutcher about twice a month for a ten-month period and reported his observations. Dr. Belcher, on the other hand, diagnosed dysthymic disorder after a single examination of Crutcher consisting of a mental status examination and diagnostic interview but no other psychological testing. Crutcher's residual functional capacity is based on his symptoms, not on his diagnosis. SSR 96-8p ("RFC assessment considers only functional limitations and restrictions").

Moreover, I conclude the ALJ's reason that Dr. Bigley's opinion was inconsistent with the record as a whole is not supported by substantial evidence in the record.

Crutcher spent fourteen months in a drug rehabilitation facility at the age of nine. He was then institutionalized at the Devereux Foundation in California for seventeen months at the age of twelve because of conflicts with the law, truancy, running away, and self-destructive behavior. When starting treatment at Devereux, Crutcher was described as a reticent, depressed boy who preferred to be left alone. He had improved by the end of the treatment, but his "depressive and self abuse responses to family, personal and social realities finally manifested itself in a[n] accidental but near fatal drug overdose." Tr. 551. Crutcher reported to Dr. Belcher a suicide attempt in his twenties, requiring surgery to repair his stomach. He went to the emergency room to dress his cuts and abrasions after attempting suicide in 2012, the summer before the hearing. The record demonstrates a life-long history of institutionalization and suicide attempts.

I am also struck by the consistency of Crutcher's presentation to the various medical providers. There is a single instance in September 2012 when Dr. Bigley explains in his treatment notes that even though Crutcher still had a flat affect, he laughed a little bit when he talked about the coast and diving in the waves. Tr. 370.

Aside from this single instance, Crutcher consistently presents himself to medical providers demonstrating physical symptoms of his psychological impairments. From her examination on February 23, 2011, Dr. Belcher described Crutcher as having intermittent eye contact, very low volume speech, appearing lethargic by slumping into the corner of the sofa with a forlorn look on his face, a blunted affect, irritable, guarded, his responses were often sarcastic, and he appeared to isolate by pushing others away with a pessimistic and surly attitude. Tr. 292-

96.  Dr. Bigley described on April 27, 2012:  "He looks again very severely depressed, does not make eye contact very much."  Tr. 390.  Dr. Bigley described on June 22, 2012:  "He looks his usual self, kind of not looking at me very much and looking kind of distraught but has a little bit more of a pressured speech where he just talks and talks and does not allow me to interrupt him to ask further questions."  Tr. 382.  Poss, a qualified mental health professional at Options Counseling, described Crutcher on September 13, 2012 as restless, fidgety, pressured speech, a constricted affect, a depressed mood, ready to cry at times, slowed and disorganized thinking, struggling to find the right words, and taking a few moments to respond to questions.  Tr. 442-43.  On December 10, 2012, Crutcher showed the provider at Lane County Mental Health the spot where he was cutting on his leg, something he has done at times over the years "to get the down feelings out."  Tr. 527.  Heidi Tafjord, a psychiatric mental health nurse practitioner at Lane County Mental Health who provided medication management to Crutcher, described him on December 13, 2012 as having avoidant eye contact, a depressed/sad or anxious/fearful demeanor, and pressured and tangential speech.  Tr. 524.  These are only a few of the many examples of Crutcher's impaired mental state.

Dr. Bigley's opinion and his treatment notes concerning Crutcher's depression and related symptoms are consistent with the observations of the other medical providers.  This is even true of Dr. Belcher's opinion, in spite of her more optimistic diagnosis and opinion.  Crutcher, who has been homeless for years, cannot be blamed for seeking treatment from qualified mental health professionals and psychological mental health nurse practitioners rather than psychologists or psychiatrists who could have performed more extensive testing.  I find the ALJ erred by not providing specific and legitimate reasons supported by substantial evidence in the record as

required to discredit Dr. Bigley's opinion that Crutcher is unable to work for psychological reasons.

B.    Bear, Poss, and Coppedge

Bear, Poss, and Coppedge, who began mental health treatment of Crutcher in September 2012, assessed him with GAF scores ranging from 28 through 32.  The mental health providers did not specify limitations on his functionality due to his mental impairments, but they did make observations of his behavior that were consistent with Dr. Bigley's observations.

A GAF score, or the Global Assessment of Functioning, is a numeric measure of symptoms and functional level.  The GAF is a scale from 1 to 100, in ten point increments, that is used by clinicians to determine the individual's overall functioning.  A GAF of 21 to 30 means "**Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment** (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) **OR inability to function in almost all areas** (e.g., stays in bed all day; no job, home, or friends).  The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) ("DSM-IV")[2].  A GAF of 31 to 40 means "**Some impairment in reality testing or communication** (e.g., speech is at times illogical, obscure, or irrelevant) **OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood** (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." Id.

---

[2]  The medical community transitioned to DSM-V by January 1, 2014, but the DSM-IV was in effect at the time of these opinions.

"Because the final GAF rating always reflects the worse of the two the score does not reflect the clinician's opinion of functional capacity." Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010) (internal quotation omitted). "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Keyser v. Comm'r Soc. Sec. Admin., 648 F.3d 721, 723 n.1 (9th Cir. 2011) (internal quotation omitted).

The parties agree that Bear, Poss, and Coppedge are not acceptable medical sources under the regulations. Thus, the ALJ may discount testimony from these other medical sources by giving reasons germane to each witness. Molina, 674 F.3d at 1111.

The ALJ gave great weight to the opinions of Dr. Belcher and Dr. Kennemer, the state nonexamining psychologist, both of whom found that Crutcher suffered from no more than moderate impairments which could be addressed with a functional limitation to simple isolated work. The ALJ reasoned there was no credible evidence of any change in Crutcher's condition since the opinions of Drs. Belcher and Kennemer, given in February and April of 2011, and the treating mental health providers (Bear, Poss, and Coppedge). He was also concerned Crutcher's limited credibility would have affected the opinions of the treating mental health providers. These reasons are all supported by the record.

The ALJ was concerned about the mental health providers diagnosing PTSD when Crutcher refused to describe the abuse he suffered. The ALJ may defer to the opinion of Dr. Belcher, to whom Crutcher mentioned the childhood sexual abuse. Dr. Belcher concluded Crutcher reported some symptoms of PTSD but they were insufficient to meet the criteria for the disorder. Dr. Belcher, as a psychologist, has more education in the specialty than the treating

mental health providers.  Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001) (more weight is given to the opinion of a specialist concerning matters in his specialty than to opinion of nonspecialist).

Finally, the ALJ reasoned that Crutcher, who lived independently even though he was homeless, did not have the symptoms described by the GAF assessment associated with scores in the 21 to 30 range.  I would agree–there is no evidence Crutcher is influenced by delusions or hallucinations, acts grossly inappropriately, or stays in bed all day.  Although he admitted to hearing some voices and seeing some hallucinations, he did not pay attention to them and claimed they said nothing harmful to him.  There is evidence supporting the assessment of Crutcher's symptoms with a GAF score of 31 or 32, however.

In sum, the ALJ provided germane reasons to disregard the opinions of the treating mental health providers, other than their assessment that Crutcher had a GAF of 28 through 30 at times.  More to the point, none of the treating mental health providers stated any specific functional limitations.  Any error is harmless.  Molina, 674 F.3d at 1115 (an ALJ's error is harmless if it was "inconsequential to the ultimate nondisability determination.").

II.    Lay Witness

The ALJ noted Crutcher's mother reported in 2010 that he had significant limitations in physical activity or social interaction.  The ALJ discounted the mother's opinion because her description of his physical condition was not consistent with the medical record which indicated resolution of the hernia.  The ALJ also noted the mother did not mention the role of substance abuse in any social impairment.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. Id. at 1114. The germane reasons must be specific. Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009). A legitimate reason to discount lay testimony is that it conflicts with medical evidence. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005). But the ALJ cannot discredit lay testimony because it is not supported by, or corroborated by, medical evidence in the record. Bruce, 557 F.3d at 1116.

Crutcher contends the ALJ erred in rejecting the lay testimony of his mother, Roxanne Crutcher. He argues the lack of comments in the medical records about alcohol impairment, in light of the frequency he was examined, indicate it is doubtful he has a serious alcohol problem. Regarding his hernia condition, Crutcher's mother wrote her statement prior to his last hernia surgery so it does not reflect the temporary improvement that occurred after the surgery. Crutcher also notes the pain in the area of his hernia eventually returned.

Because of the early timing of the mother's opinion–before the second hernia repair surgery, temporary lessening of pain, and return of abdominal pain–her opinion on Crutcher's physical condition is of no assistance so I decline to address it or the ALJ's reasoning to disregard it.

Turning to the mother's description of Crutcher's difficulty when interacting with others, as explained above, no health provider attributed Crutcher's mental problems to substance abuse. Thus, this reason is not supported by the record, and the ALJ could not rely on it to discredit the mother. The mother's description of Crutcher's mental health limitations corroborates Dr. Bigley's opinion.

Page 14 - OPINION AND ORDER

III.    Remedy

I concluded above that the ALJ improperly discredited Dr. Bigley's opinion and

Crutcher's mother's testimony.

The court has the discretion to remand the case for additional evidence and findings or to

award benefits.  McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).  Under the

credit-as-true rule, a court should remand to an ALJ with instructions to calculate and award

benefits if three factors are satisfied:

> (1) the record has been fully developed and further administrative proceedings
> would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient
> reasons for rejecting evidence, whether claimant testimony or medical opinion;
> and (3) if the improperly discredited evidence were credited as true, the ALJ
> would be required to find the claimant disabled on remand.

Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014).  The court has some flexibility in

applying the credit-as-true rule, however, and can remand for further proceedings "when, even

though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a

whole creates serious doubt that a claimant is, in fact, disabled."  Id. at 1021.

The three factors of the credit-as-true rule are satisfied here.  I see nothing to be gained by

further administrative proceedings.  If I credit the opinion of Dr. Bigley, Crutcher would have to

be found disabled.  I have no doubt he is, at least at this point in his recently-started mental health

treatment.  Thus, I conclude he is entitled to a finding of disability.

///


///


Page 15 - OPINION AND ORDER

## CONCLUSION

The decision of the Commissioner is reversed.  The case is remanded for a finding of

disability.

IT IS SO ORDERED.

Dated this _____31st_____ day of March, 2015.


        _/s/ Garr M. King_____

Garr M. King
United States District Judge